

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

03 MAR 11 PM 4: 27

JOSEPH A. O'TOOLE,

    Plaintiff,

vs.                                                                             CIV NO. 99-1426 LH/RLP

NORTHROP GRUMMAN CORP.,

    Defendant.

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

1. Mr. O'Toole was an employee for Grumman Aerospace, and then Northrop Grumman, its successor, for 27 years, from 1970 until 1997. In 1994, he was seconded (loaned) to the federal government to work on a project in San Diego. This assignment was performed under the standard company long-term field assignment policy. When his secondment was completed in 1996, he was not recalled back to Bethpage, New York, as required in the secondment agreement and company long-term field assignment policy. Instead he found a job within the company and relocated to Los Alamos to perform work for the Los Alamos National Laboratory with another portion of Northrop Grumman.

2. The secondment agreement provided that Mr. O'Toole would receive the same re-location benefits on his return from the secondment as he received on the way out to San Diego.

3. The long-term field assignment only provided changes in benefits before the move to San Diego.



Plaintiff's Findings of Fact and Conclusions of Law                                                                 Page 1

4. Northrop Grumman failed to follow standard relocation procedures causing Mr. O'Toole to incur expenses associated with the move that he should not have had

5. Northrop Grumman failed to pay Mr. O'Toole all the benefits he was entitled to under the original long-term field assignment policy.

6. Because reimbursement of moving expenses is a taxable event, Northrop Grumman would "gross-up" the reimbursement amount so that the net amount after taxes would pay these expenses in full.

7. Northrop Grumman intentionally failed to pay Mr. O'Toole timely the following expenses they conceded they owed him, causing him to incur expenses he would not have otherwise had.

8. NG breached the contract willfully and maliciously entitling the plaintiff to damages associated with the above as well as punitive damages.

9. NG failed to follow its standard grievance procedure after the plaintiff submitted his grievance on this matter by ignoring the grievance and as a result of the willful breach, the plaintiff incurred attorney expenses he would not otherwise have incurred.

10. Plaintiff was employed by Grumman, and then Northrop Grumman, from 1970 until 1997.

11. In 1996, Plaintiff relocated from San Diego, California, to Los Alamos, New Mexico.

12. The following items of expenses were agreed by Northrop Grumman to be owed Mr. O'Toole shortly after they were incurred in 1996, but were not paid until August 2001:

    (a) $7,600  Duplicate housing costs not already paid (Sept and to Oct 26, 1996).

    (b) $5,130  Costs not yet reimbursed for San Diego house sale.

    (c) $11,575  Lump sum at standard rate of 5% to reimburse house purchase expenses in Los Alamos.

    (d) $5,407  Lump sum for moving household items to final purchased home.

    (e) Gross-up on the above items.

    (f) $1,857  Reimburse for incorrect grossup payments already made by Northrop Grumman at 31% vs. 28%.

13. The plaintiff is also entitled to the following items of damages:

    (a) $21,500  Difference between purchase price and sale price of house in San Diego, California

    (b) $10,814  Lump sum for moving household items from one house to another 98 Rim to 4149B Arizona and then to 460 Oppenheimer.

    (c) $2,292  O'Toole time (two weeks) spent moving from two rentals to another. (Gross amount is $3,539 before taxes.)

    (d) $4,000  Lump sum for amount over $1,000 based on average moving allowance paid above base of $1,000

    (e) $9,405  Reimburse all taxes and penalties for early withdrawal paid on $19,000 employee investment plan withdrawal used to finance relocations

    (f) $11,880  Reimburse all taxes and penalties for early withdrawal paid on $24,000 employee investment plan withdrawal used to finance relocations

(g) $23,683   Reimburse all taxes and penalties for early withdrawal on $45,758 employee investment plan withdrawal used to purchase house to avoid having to federal and state capital gains taxes

(h) $1,892   Reimburse all taxes and penalties for early withdrawal on $3,823 employee investment plan withdrawal used to make part of payments on Federal and state taxes on above item.

(i) $13,140   Reimburse additional taxes paid as a result of not having bought a house and not having mortgage interest and real estate taxes to deduct.

(j) $4,800   Reimbursement for mortgage principle payments that were not made since money went toward rent and not toward a purchased house.

(k) $37,100   Payment at 14% for the cost of selling current home to purchase the size of a home that Mr. O'Toole contends he could have purchased if his relocation to Los Alamos had been handled differently

(l) $13,250   Payment at 5% for the cost of purchasing the size of a home that Mr. O'Toole contends he could have purchased if his relocation to Los Alamos had been handled correctly.

(m) $76,758   Reimbursement for lost earnings from employee investment fund withdrawals.

(n) $55,149   Reimbursement of continuing expenses, including interest on tax payments, associated with the above items to be determined upon resolution of this action.

   (1) $16,159 for 113 months of mortgage insurance at $143 per month

   (2) $38,990 for interest on $21,500 for 113 months @ 6.61% (8.5% less tax benefit)

(o) Gross-up on these amounts

14. Northrop Grumman, while never disputing it owed Mr. O'Toole reimbursement for relocation expenses, willfully failed to timely pay him these expenses.

15. NG was motivated by the following when it intentionally and maliciously violated the contract:

    (a) to avoid triggering an audit which would have revealed a breach of the FA regulation when Grumman under-bid the project,

    (b) to avoid triggering an audit which would have revealed a breach of the FA regulation when NG took over the contract, reduced the contract price of engineers in Mr. O'Toole's organization, but did not reduce the personal services contract price which it was required to do,

    (c) to avoid triggering an audit which would have revealed a breach of the personal services contract and FA regulations by destroying documents relating to the personal services which it was supposed to keep 3 years after completion of the contract,

    (d) failing to pay timely the undisputed part of the move to Mr. O'Toole until years later so that the payment, in excess of the contract amount, would not trigger an audit, and

    (e) failing to pay a substantial undisputed amount in order to coerce Mr. O'Toole into accepting amounts within the contract amount and thereby save the company from a possible audit and the discovery of FAR violations.

16. Damages associated with the willful and malicious breach of contract:

    (a) All of the above damages

    (b) Punitive damages

17. Prejudgment interest and costs

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and the subject matter.

2. The governing contract for the Los Alamos relocation is the long term field assignment with Grumman of 1994.

3. There was never any meeting of the minds as to the terms of the "May 22, 1996, Relocation Agreement."

4. There was no consideration for the "May 22, 1996, Relocation Agreement."

5. The defendant willfully and maliciously breached its contract with the plaintiff.

6. Northrop Grumman's actions in covering up its FAR violations by delaying payment to Mr. O'Toole and applying economic duress to Mr. O'Toole is tortious conduct of an egregious nature directed at Mr. O'Toole and also directed at the public generally.

7. Damages for breach of contract are intended to put the aggrieved party in the same economic position he would have been in if the contract had been performed.

8. The plaintiff's damages for the breach of contract and for his attempts to mitigate his damages are _____.

9. The plaintiff is entitled to punitive damages in the amount of _____.


ALEXANDER WOLD & ASSOCIATES, P.C.

by: _____
Alexander A. Wold, Jr.
Attorney for the Plaintiff
302 Silver Avenue SE
Albuquerque, NM 87102
(505) 242-3444
fax (505) 242-3770

## CERTIFICATE OF MAILING

I hereby certify that a true and correct copy of the foregoing Plaintiff's Memorandum of Law was mailed to the counsel of record listed below on the 11th day of March, 2003.

Rodey, Dickason, Sloan, Akin & Robb, P.C.
Scott Gordon, Esq
Edward Ricco, Esq
P.O. Box 1888
Albuquerque, New Mexico 87103

_____
Alexander A. Wold, Jr.