IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| JOSEPH O'TOOLE, | ) | |
| | ) | |
| Plaintiff, | ) | CIV 99-1426 LH/RLP |
| | ) | |
| v. | ) | |
| | ) | |
| NORTHROP GRUMMAN CORP., | ) | MEMORANDUM OPINION |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on remand from the United States Court of Appeals for the Tenth Circuit. This is the third remand of this case. (See Filing Nos. 56, 83, and 98.) Only the following four issues[1] remain to be considered by the Court:

> (1) Whether O'Toole is entitled to an award based on his loss of a mortgage interest deduction; and if so in what amount.
>
> (2) What O'Toole's lost earnings and lost earnings on earnings are.
>
> (3) Elaboration of this Court's reasoning for its denial of O'Toole's claim for prejudgment interest on $2,000.00 of lost home equity.
>
> (4) Determination of which of O'Toole's damages awards are subject to gross-up and which are not.

---

[1] Plaintiff's brief contains a suggestion that the record should be reopened for the receipt of more evidence. This suggestion is rejected by the Court.

For detailed recitations of the facts of this case, see Filing Nos. 56, 78, 83, 88, and 98.

**DISCUSSION**

A. Lost Mortgage Interest Deduction

The Court previously determined that O'Toole lost his mortgage interest tax deduction from July 1, 1997, through September of 1998, a period of fifteen (15) months. (Filing No. 88, at 10.) In a prior opinion, the Court held that, although it was satisfied that O'Toole had sustained some damage by way of having to pay more income tax than he otherwise would have paid commencing in mid-1997, it was virtually impossible to calculate the amount of that damage. (See Id.) The Court of Appeals disagreed, concluding that because a minimum award was supportable by the evidence, a denial based solely on the speculative nature of the calculation was inappropriate. (See Filing No. 98, at 10.) Upon remand, the parties have substantially agreed upon the value of O'Toole's lost mortgage deduction and associated taxes, but not on whether O'Toole should recover on the claim. (See generally, Filing Nos. 114 at 9-15, 115 at 4-8.) Moreover, the Court of Appeals has concluded that the evidence could support a minimal award. (See Filing No. 98, at 10.) It thus requires no speculation for the Court to find that the value of the lost mortgage interest deduction and associated taxes is $17,600.00 and that $7,040.00 of this amount

was incurred in the period ending June 30, 1997, while $10,560.00 was incurred in the period ending December 31, 1998.

Northrop Grumman argues that the Court should not award damages for the lost mortgage interest deduction because O'Toole failed to mitigate damages by buying new cars, taking vacations, and making educational payments. However, there is evidence that O'Toole purchased his cars before the dispute with Northrop Grumman arose and no evidence that the vacation he took was anything but a modest one. This Court previously found that "[w]ith all of the expenses other than relocation, that [O'Toole] was facing, he would have most certainly had to withdraw funds from his SIP." (Filing No. 88, at 14.) The Court sees no reason to disturb that finding today. O'Toole acted reasonably in withdrawing from his SIP to cover his lost mortgage interest deduction and Northrop Grumman cannot avoid liability on the basis of failure to mitigate.

B. Lost Earnings and Lost Earnings on Earnings

The Court of Appeals remanded this claim so this Court can determine an award of earnings and earnings on the unpaid earnings. (Filing No. 98, at 16.) This Court has also been directed to take judicial notice of proof of earnings after 1999 from Northrop Grumman's website, to consider whether 12% is a reasonable average for all years for lost earnings and earnings

on earnings, and to consider whether O'Toole would have left his money invested in the U.S. Equity Fund. (*Id.*)

As an initial matter, the Court reviews its previous findings. In 1996, O'Toole was forced to withdraw $15,230.00 from his SIP due to Northrop Grumman's failure to pay his unreimbursed expenses. (Filing No. 88, at 8.) In 1998, O'Toole was similarly forced to withdraw $13,400.00. (*Id.* at 8-9.) In order to arrive at those net amounts, O'Toole lost $30,770.00 in 1996 and $26,400.00 in 1998. The Court also notes that O'Toole is entitled to a payment of $7,040.00 in the period ending June 30, 1997, and $10,560.00 in the period ending March 31, 1998. *See supra*. Northrop Grumman made payments to O'Toole in the amount of $28,230.00 during the period ending December 31, 2001, and $31,970.00 during the period ending December 31, 2005. The Court finds that its calculations should be based on quarterly periods with interest compounded accordingly.

A significant question in determining what interest rate to apply is which fund or funds O'Toole would have selected had his money remained in the SIP. Although O'Toole argues that he would have actively managed his portfolio, moving his money to higher performing funds, there is no evidence to support this. During the time the SIP was funded, O'Toole never switched between the investments he initially selected. Northrop Grumman suggests that the Court should average the yields of all the

funds in the SIP, but there is no evidence that O'Toole would have purchased all the available funds in equal shares. O'Toole had a selection of funds to choose from when he joined the SIP and he chose only two of the many available. Although the question before the Court is inherently speculative, neither party offers reasoning grounded in the facts. The Court finds that O'Toole kept his money in two funds in the SIP: the U.S. Equity Fund and the Equity Growth (Magellan) Fund. The Equity Growth (Magellan) Fund has been discontinued. The Court of Appeals noted that "[i]t seems reasonable to assume that Mr. O'Toole would have left his money invested in [the U.S. Equity Fund] after the other fund in which he was invested was discontinued." (Filing No. 98, at 15.) This Court agrees.

The next question is what interest rate the U.S. Equity Fund would have yielded. Pursuant to the direction of the Court of Appeals, this Court takes judicial notice of the proof of earnings after 1999 from Northrop Grumman's website. Northrop Grumman Saving Plan Performance Update 1 (September 30, 2008), http://benefits.northropgrumman.com/Savings/Savings%20Plan%20Performance/Pages/default.aspx. The average rate of return over ten years on the U.S. Equity Fund is 4.5% and the Court finds that the interest on O'Toole's claim should be calculated at that rate. Accordingly, the Court finds that O'Toole's suggestion

that 12% is a reasonable average interest rate for all years for lost earnings and earnings on earnings lacks merit.

Taking account of the factors discussed above, the Court makes the following calculations :

| Period Ending | Beginning Amount Owed | Adjustments | Earnings | Ending Amount Owed |
|---|---|---|---|---|
| 6/29/1996 | $0.00 | $30,770.00 | $0.00 | $30,770.00 |
| 9/30/1996 | $30,770.00 | | $346.16 | $31,116.16 |
| 12/31/1996 | $31,116.16 | | $350.06 | $31,466.22 |
| 3/31/1997 | $31,466.22 | | $353.99 | $31,820.21 |
| 6/30/1997 | $31,820.21 | $7,040.00 | $357.98 | $39,218.19 |
| 9/30/1997 | $39,218.19 | | $441.20 | $39,659.40 |
| 12/31/1997 | $39,659.40 | | $446.17 | $40,105.56 |
| 3/31/1998 | $40,105.56 | $10,560.00 | $451.19 | $51,116.75 |
| 6/30/1998 | $51,116.75 | | $575.06 | $51,691.82 |
| 9/30/1998 | $51,691.82 | | $581.53 | $52,273.35 |
| 12/31/1998 | $52,273.35 | $26,400.00 | $588.08 | $79,261.42 |
| 3/31/1999 | $79,261.42 | | $891.69 | $80,153.11 |
| 6/30/1999 | $80,153.11 | | $901.72 | $81,054.84 |
| 9/30/1999 | $81,054.84 | | $911.87 | $81,966.70 |
| 12/31/1999 | $81,966.70 | | $922.13 | $82,888.83 |
| 3/31/2000 | $82,888.83 | | $932.50 | $83,821.33 |
| 6/30/2000 | $83,821.33 | | $942.99 | $84,764.32 |
| 9/30/2000 | $84,764.32 | | $953.60 | $85,717.92 |
| 12/31/2000 | $85,717.92 | | $964.33 | $86,682.24 |
| 3/31/2001 | $86,682.24 | | $975.18 | $87,657.42 |
| 6/30/2001 | $87,657.42 | | $986.15 | $88,643.57 |
| 9/30/2001 | $88,643.57 | | $997.24 | $89,640.81 |
| 12/31/2001 | $89,640.81 | ($28,230.00) | $1,008.46 | $62,419.26 |
| 3/31/2002 | $62,419.26 | | $702.22 | $63,121.48 |
| 6/30/2002 | $63,121.48 | | $710.12 | $63,831.60 |
| 9/30/2002 | $63,831.60 | | $718.11 | $64,549.70 |
| 12/31/2002 | $64,549.70 | | $726.18 | $65,275.89 |
| 3/31/2003 | $65,275.89 | | $734.35 | $66,010.24 |
| 6/30/2003 | $66,010.24 | | $742.62 | $66,752.86 |
| 9/30/2003 | $66,752.86 | | $750.97 | $67,503.83 |
| 12/31/2003 | $67,503.83 | | $759.42 | $68,263.24 |
| 3/31/2004 | $68,263.24 | | $767.96 | $69,031.21 |
| 6/30/2004 | $69,031.21 | | $776.60 | $69,807.81 |

| | | | | |
|---|---|---|---|---|
| 9/30/2004 | $69,807.81 | | $785.34 | $70,593.14 |
| 12/31/2004 | $70,593.14 | | $794.17 | $71,387.32 |
| 3/31/2005 | $71,387.32 | | $803.11 | $72,190.42 |
| 6/30/2005 | $72,190.42 | | $812.14 | $73,002.57 |
| 9/30/2005 | $73,002.57 | | $821.28 | $73,823.85 |
| 12/31/2005 | $73,823.85 | ($31,970.00) | $830.52 | $42,684.36 |
| 3/31/2006 | $42,684.36 | | $480.20 | $43,164.56 |
| 6/30/2006 | $43,164.56 | | $485.60 | $43,650.16 |
| 9/30/2006 | $43,650.16 | | $491.06 | $44,141.23 |
| 12/31/2006 | $44,141.23 | | $496.59 | $44,637.82 |
| 3/31/2007 | $44,637.82 | | $502.18 | $45,139.99 |
| 6/30/2007 | $45,139.99 | | $507.82 | $45,647.82 |
| 9/30/2007 | $45,647.82 | | $513.54 | $46,161.36 |
| 12/31/2007 | $46,161.36 | | $519.32 | $46,680.67 |
| 3/31/2008 | $46,680.67 | | $525.16 | $47,205.83 |
| 6/30/2008 | $47,205.83 | | $531.07 | $47,736.89 |
| 9/30/2008 | $47,736.89 | | $537.04 | $48,273.93 |
| 12/31/2008 | $48,273.93 | | $543.08 | **$48,817.02** |

Accordingly, as of this date, the Court finds that Northrop Grumman should pay O'Toole $48,817.02 for his loss of mortgage interest deduction and for his lost earnings and earnings on earnings.

C. Claim for Prejudgment Interest on Award for Lost Equity

The Court of Appeals remanded this issue for further elaboration as to why the Court failed to grant the plaintiff prejudgment interest. In the Court's opinion filed May 23, 2005 (Filing No. 88), the Court made the following finding:

> The other consequential damage claim he might have in connection with the one year delay after June of 1997 would be the increase in equity that he would have built up during that time, had he been able to purchase a house at the end of the one-year period. At the most,

-7-

>        this would amount to $2,000 or less
>        . . . .

This determination of $2000 was premised on actual mortgage payments which the plaintiff made at a later date when he did purchase a house. The amount was not in any way liquidated or settled at the time the plaintiff purchased his home in 1998, and of course, we have no evidence as to what he actually would have paid during the period of 1997-98, resulting in an increase in the equity in his home. As this was essentially an estimate based upon subsequent events, the Court concluded that it would be unfair to grant the plaintiff prejudgment interest on that amount. *Wickham Constr. Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers,* No. 74 CIV. 3248, 1991 WL 84595, at *1 (S.D.N.Y. May 15, 1991)(quoting *rolf v. Blyth, Eastman Dillon & Co., Inc.,* 637 F.2d 77, 87 (2d Cir. 1980)), *aff'd* 955 F.2d 831 (2nd Cir. 1992).

D. Gross-Up

This issue was remanded for reconsideration in order that the parties can explain to this Court whether O'Toole's damage awards are taxable and whether they replace monies that would not have been taxable.

The $2,000 award for loss of home equity is a non-taxable event, and accordingly, it is not subject to being grossed up. The other damages which have been awarded in this opinion are admittedly consequential damages. The plaintiff has

testified that consequential damages are not subject to being grossed up (Trial Tr. 180-181). In addition, in his testimony on page 319 of the trial transcript he testified as follows:

> Q. That's one thing you are not seeking gross up on.
>
> A. Correct.
>
> Q. But the rest of these you are?
>
> A. Yes.
>
> Q. And you base that on the company's policy to gross you up on relocation expenses; correct?
>
> A. Yes.
>
> Q. But some of these are consequential damages, aren't they?
>
> A. Quite a few of them are, yes.
>
> Q. Quite a few of them are not relocation expenses, but are rather consequential damages that you are claiming in the case.
>
> A. Right, yes.
>
> Q. There is no policy at Northrop Grumman to gross you up on consequential damages, is there, Mr. O'Toole?
>
> A. Not to consequential damages.

In addition to that testimony, he further testified to a "green sheet" which was an itemization of the damages he was claiming as reflected in the exhibits received in evidence.

-9-

Among these was Exhibit 11 for some $88,000 plus, which was made up of the four withdrawals from his Northrop Grumman Savings and Investment Plan, which totaled that amount. On Pages 320-322 of the transcript, he testified that the damages he was seeking should not include a gross-up on those amounts. The awards of damages in this order do not include taxable amounts, and indeed, include amounts which the plaintiff has testified were not subject to being grossed up. For these reasons, the Court finds that the amounts involved are not subject to gross up.

## CONCLUSION

The Court finds that plaintiff is entitled on Issues A and B to recovery in the amount of $48,817.02; that no prejudgment interest is due on the $2,000 award for the reasons stated, and that the amounts involved in this order are not subject to gross-up. A separate order will be entered in accordance with this memorandum opinion.

DATED this 31st day of December, 2008.

BY THE COURT:

/s/ Lyle E. Strom

LYLE E. STROM, Senior Judge
United States District Court